PEOPLE v CERVI

Docket No. 262331. Submitted November 8, 2005, at Detroit. Decided April 18, 2006, at 9:00 a.m.

Jonathan Cervi was charged in the 31st District Court with two counts of use of the Internet or a computer to communicate with another person to commit or attempt to commit criminal sexual conduct in the third degree (CSC III), MCL 750.145d(1)(a); and one count of using the Internet to communicate with a person he believed to be a minor for the purpose of committing or attempting to produce child sexually abusive material, MCL 750.145c(1). The charges related to a series of Internet chat room communications between the defendant and a police officer who posed as a 14-year-old girl. After a preliminary examination, the court, Paul J. Paruk, J., bound the defendant over to the Wayne Circuit Court for trial on one count of violating MCL 750.145d(1)(a) and dismissed the other counts. After several motion hearings, the circuit court, Deborah A. Thomas, J., denied the prosecution's motion to reinstate the dismissed counts and the defendant's motion to quash the information. The circuit court also granted the defendant's motion to exclude evidence of a photograph of male anatomy the defendant had e-mailed to the perceived 14-year-old girl. The prosecution appealed by leave granted.

The Court of Appeals *held*:

1. The circuit court and the district court erred in determining that the defendant could not be bound over on the second count of use of the Internet or a computer to communicate with another person with the intent to attempt to commit CSC III, MCL 750.145d(1)(a). The evidence supports a reasonable belief that the defendant used a computer or the Internet for the specific purpose, or with the specific intent, to attempt sexual penetration of someone he believed was a 14-year-old girl. Instant message conversations on two different days establish probable cause to bind the defendant over on two counts of the offense.

2. The statute does not criminalize words alone. The mere words do not constitute the offense; the act of communicating with a perceived minor with the intent to make that minor the victim of a crime is what constitutes the offense. The content of the

defendant's speech is more than mere words. The content of the message combined with the sender's intent comprise an invitation, and issuing that invitation to a person the issuer believes is a minor is proscribed by the law. The statute does not impermissibly burden free speech. The protection of children from predators qualifies as a compelling state interest, and the statute narrowly affects only those who specifically target children for unlawful purposes.

3. The circuit court and the district court erred by dismissing the count of use of the Internet or a computer to communicate with any person with the intent to produce or attempt to produce child sexually abusive material. The defendant used his computer and the Internet to ask the perceived minor if he could videotape their sexual encounter. There is a reasonable inference that the defendant used the Internet to communicate with a person for the purpose of attempting to arrange for, produce, or make child sexually abusive material, and that the defendant believed that the intended victim was a minor.

4. The circuit court did not abuse its discretion by excluding a photograph that defendant e-mailed to the perceived minor on the basis that admission of the photograph might unfairly prejudice the defendant. MRE 403.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. CRIMINAL LAW — USE OF THE INTERNET OR A COMPUTER TO COMMUNICATE WITH ANY PERSON TO ATTEMPT TO COMMIT CRIMINAL SEXUAL CONDUCT INVOLVING A MINOR — MULTIPLE COMMUNICATIONS — SEPARATE COUNTS.

Each time there is evidence that a defendant used a computer or the Internet for the specific purpose, or with the specific intent, to communicate with any person in an attempt to commit third-degree criminal sexual conduct involving a minor or perceived minor, a separate count of the offense of using a computer or the Internet for that purpose can be charged against the defendant (MCL 750.145d[1], 750.520d[d][a]).

2. CRIMINAL LAW — USE OF THE INTERNET OR A COMPUTER TO COMMUNICATE WITH A MINOR OR PERCEIVED MINOR TO ATTEMPT TO COMMIT CRIMINAL SEXUAL CONDUCT — FREE SPEECH.

The statute that makes it a crime to use a computer or the Internet for the specific purpose, or with the specific intent, to communicate with any person in an attempt to commit third-degree criminal sexual conduct involving a minor or perceived minor does not criminalize the expression of words alone; rather, the statute

criminalizes communication with a minor or perceived minor with the specific intent to make the minor or perceived minor the victim of third-degree criminal sexual conduct (MCL 750.145d[1], 750.520d[1][a]).

3. CRIMINAL LAW — USE OF THE INTERNET OR A COMPUTER TO COMMUNICATE WITH ANY PERSON TO ATTEMPT TO PRODUCE CHILD SEXUALLY ABUSIVE MATERIAL.

The elements of the offense of using the Internet or a computer to communicate with any person for the purpose of attempting to produce child sexually abusive material are (1) use of the Internet or a computer to communicate with any person (2) for the purpose of attempting to arrange for, produce, or make child sexually abusive material, and (3) belief by the user that the intended victim of child sexually abusive activity is a minor (MCL 750.145c, 750.145d[1][a]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Jon P. Wojtala*, Assistant Prosecuting Attorney, for the people.

*Gerald S. Surowiec* for the defendant.

Before: DAVIS, P.J., and FITZGERALD and COOPER, JJ.

COOPER, J. This appeal presents a question of first impression in Michigan. It focuses on the interplay between protected free speech and the state's interest in protecting minors from sexual predators seeking victims via the Internet. At issue is MCL 750.145d, a statute which criminalizes use of "the internet or a computer . . . to communicate with any person for the purpose of . . . [c]ommitting, attempting to commit, conspiring to commit, or soliciting another person to commit" several enumerated crimes. We find that § 145d does not impermissibly burden free expression because "words alone" are not punishable under the statute; rather the statute criminalizes communication

with a minor or perceived minor with the specific intent to make that person the victim of one of the enumerated crimes.

Under MCL 750.145d(1)(a), the prosecution charged defendant with two counts of using the Internet or a computer to communicate with an undercover deputy sheriff, whom defendant believed was a 14-year-old girl, for the purpose of "committing or attempting to commit" third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(a), and one count of using the Internet or a computer to communicate with a perceived minor in order to produce or attempt to produce child sexually abusive material, MCL 750.145c(2). The prosecution appeals by leave granted from a circuit court order affirming the district court's dismissal of two of the counts charged. We affirm in part, reverse in part, and remand.

## I. FACTS

At the August 2004 preliminary examination, Wayne County Sheriff's Deputy Norman Gibson testified that his work involved "posing on line as a minor" in child pornography cases and performing "forensic analysis of the computers that are seized." Gibson routinely logged onto a Yahoo Instant Messaging service with an invented screen name and personal characteristics, usually posing as "a 14-year-old female . . . from the west side of the county, Livonia, Canton, Plymouth, Northville, . . . with a vague description of about 5'4" tall, blond hair, pretty, nice," and would "sit in a chat room a while and pretty much just wait for someone to strike up a conversation . . . ." Gibson stated that he never commenced conversations with other Internet users, and when addressed, always waited for the messenger to turn the conversation to sex.

On July 1, 2003, Gibson, in his Hamtramck office, logged on in a chat room designated "Detroit" or "Michigan" under the screen name "inozentangel," a purported Livonia girl aged 14. Around 5:44 p.m., Gibson received a greeting from someone identified as "timmyd683." Gibson replied, "hi 2 u 2."[1] Timmyd683 and Gibson initially exchanged personal information; timmyd683 described himself as a 21-year-old male living in Livonia, and Gibson identified himself as a 14-year old female Livonia resident, 5'4" tall and 105 pounds with blond hair and green eyes.

The printed log of the exchanges between Gibson and timmyd683 indicates that the conversation quickly became more intimate.[2] He wrote that she "sound[ed] gorgeous," to which she replied she was too young. He said he had misread her age and thought she was 18, and when she then indicated she would exit the conversation, he said he did not want to "seem like an old perv," asked if she was "ok with it," and checked that she was "not like working with the cops or anything." She confirmed that he was 21, and then said she was "fine wit it." As the conversation went on, he asked her bra size, asked if she was "looking for anything" sug-

---

[1] Gibson's instant messenger service archived his subsequent exchanges with timmyd683 and cerv25, another screen name used by defendant, and the prosecution introduced at the preliminary examination printed copies of the exchanges.

[2] The recap of the e-mail conversations will refer to "he" and "she" for ease of following the thread of conversation. "He" is defendant/timmyd683 and "she" is Officer Gibson/inozentangel. Where direct quotations are included, they retain the grammar, punctuation and spelling reflected in the printed exchanges between defendant and inozentangel.

Many sexually explicit and disturbing details of the conversation are left out of this opinion, though some are included to ensure the record is clear on the nature of the conversations defendant had with this perceived minor.

gested a casual relationship, an intimate relationship, or a "f*** buddy" relationship. He asked if she was "a sexual girl," and when she replied "a little bit," he asked if she wanted to see a picture of him.

Gibson e-mailed timmyd683 a picture of a Wayne County Sheriff undercover officer when she was 14 years old, and timmyd683 e-mailed Gibson two photos, one showing a white male with short hair, and one that Gibson described as depicting "a male from mid-abdomen down to mid-thigh with his pants pulled down and his hand on his genitalia."

He wrote that he had not meant to send the second photo, and added "ok, well you've seen all of me now[.]" He then suggested they meet. She asked what he wanted to do, and he said it depended, then asked if she could go out late or sneak out if necessary, and she replied that she could. He asked whether she knew any "private places" in the area, and she said she did not because she had recently moved to the area. She again asked what he wanted to go out and do, and he answered "youre gonna hate me and not talk to me after i tell you[.]" He then asked whether she would "go down on" him. She said "sure," and after he asked again she confirmed that they were both talking about oral sex. He informed her that he was "completely shaven," so it would be "nice and clean."

They discussed meeting that same night, and he said he didn't want to "get . . . rejected" or "find out that your gonna have me arrested!" She asked why she would have him arrested, and he answered "hahah, i dont know, cuz its illegal[.]" She said "well then forget it," and he replied that he was "just kidding."

He suggested they meet that night, but she suggested the next night instead. He said that he had plans to leave town on vacation the next day, and the July 1,

2003, exchange concluded with inozentangel's statement that she would wait. Around 4:30 p.m. the next afternoon, timmyd683 advised inozentangel via instant message that his vacation plans had changed, and he again brought up the subject of meeting. He asked her if she had met other men on the Internet, and she replied she had met five others. He asked if she had had sex with them and she said she had with three of them. They discussed the sex acts they had discussed the day before, and he asked if there was anything else she would want to do with him, and she said if "we feel like more . . . then sure." He asked if she wanted anything in return and she said she would not take money because that would make her a prostitute, but added that she needed a webcam. They spent nearly an hour discussing a plan to meet at 11:30 that night near a middle school.

At 10:38 p.m., inozentangel advised timmyd683 that she could not make it because her mother had stayed home from work. He repeatedly urged her to sneak out of the house for the meeting, and she repeatedly declined. After discussing their upcoming schedules and determining they could not meet for at least another two weeks, inozentangel said that "it wasnt meant to be[.]" Timmyd683 disagreed and told inozentangel that he had bought her a webcam. Inozentangel ended the conversation by announcing that her mother had started yelling at her to turn off the computer and go to bed.

Inozentangel and timmyd683 had brief instant message conversations on July 3, 2003, and July 6, 2003, during which they discussed getting together. On the morning of July 7, 2003, inozentangel engaged in an instant message conversation with timmyd683 under his other screen name, cerv25,[3] and said that she was

---

[3] The parties do not dispute that defendant communicated using this screen name in addition to timmyd683.

staying at her father's house in Grosse Pointe, and that she could sneak out that night and meet near Grosse Pointe North High School. Around 4:40 p.m., they communicated again to confirm the plan, and he asked if he could videotape the sex acts they had discussed. She said he could as long as the tape "doesnt go anywhere[.]" She gave him the address of the high school. Then for about 15 minutes the discussion centered on inozentangel's sexual experience and preferred male body characteristics, and what each person would wear later that evening. They then recapped the plan for the evening, specifically that they would find a private location and cerv25 would videotape inozentangel performing fellatio on him. Inozentangel and cerv25 last communicated via instant message for approximately one hour between 10:30 p.m. and 11:30 p.m.; much of this conversation involved cerv25 complaining that it would be a long drive to Grosse Pointe and expressing his concern that she would not show up. They finally agreed that cerv25 would arrive at Grosse Pointe North in his Ford Explorer by 12:30 a.m. on July 8, 2003. Cerv25 again asked if inozentangel was a cop or worked with the police, and she again said no.

Gibson stated that he and other sheriff department personnel staked out the high school. Gibson's partners parked one car "directly across the street from the high school and one in the driveway so that they could see anyone entering and leaving," and Gibson waited in another car "parked alongside the football field." Around 12:25 a.m. on July 8, 2003, a Ford Explorer entered the school parking lot and "kind of did like a circle" around it, according to Gibson. Gibson stated that he turned on his lights and started driving toward the vehicle, which turned toward the exit but found it blocked by the other officers' cars. At the preliminary

examination, Gibson identified defendant as the driver of the Explorer, whom the deputies arrested at the scene. A search of the Explorer at the time of defendant's arrest yielded no condoms, towel, webcam, or other video recording equipment.[4]

## II. PROCEDURAL HISTORY

In a July 27, 2004, complaint, the prosecutor charged defendant, pursuant to MCL 750.145d(1)(a), with two counts of using a computer or the Internet to communicate with someone he believed was a minor for the purposes of committing or attempting to commit CSC III, and one count of using a computer or the Internet to communicate with someone he believed was a minor for the purposes of committing or attempting to commit child sexually abusive activity or material.[5] At the August 2004 preliminary examination, the prosecution contended that defendant's July 1, 2003, and July 2, 2003, communications with inozentangel supported the first two counts of the complaint because in each exchange defendant proposed meeting with a minor to receive oral sex and repeatedly urged the minor to meet him at particular times. Concerning the third count, the

---

[4] Shortly after defendant's arrest, Gibson tape recorded an interview with defendant. The prosecution played the tape during the preliminary examination, but the tape's content was not transcribed, and no documentation of the interview's content exists in the record provided this Court. At the preliminary examination, Gibson stated that during the interview, defendant "initialed on the bottom of the[]" July 1, 2003, through July 6, 2003, printed instant message exchanges between timmyd683/cerv25 and inozentangel.

[5] Before the issuance of the July 2004 complaint, defendant had pleaded guilty to a charge of using a computer for the purpose of committing or attempting to commit CSC III, but at a June 25, 2004, hearing the circuit court granted defendant's motion to withdraw the plea, primarily because defendant had not been advised of the minimum and maximum sentences applicable to the crime.

prosecution maintained that defendant's request to videotape the minor in a sex act supported the charge.

The district court determined it would bind defendant over on only one count of the complaint. As to counts I and II, the court found the prosecution had "more than satisfied the elements of this particular matter [using a computer or the Internet to communicate with someone he believed was a minor for the purpose of committing or attempting to commit CSC III]," but that a second contact did not merit a second count charging the same offense. As to count III, the court found that defendant's request to videotape Inozentangel in a sex act was insufficient without more to support the charge.

Defendant filed a motion in the circuit court on October 15, 2004, to quash count I. According to defendant, MCL 750.145d(1)(a) interlocked with MCL 750.520d(1)(a), requiring that in addition to showing defendant's proscribed use of a computer, the prosecutor must show that defendant committed or attempted to commit the elements of CSC III. Defendant argued that the prosecution had presented insufficient evidence that when he arrived at Grosse Pointe North he intended to commit or attempted to commit the underlying CSC III offense. Defendant also argued that the district court abused its discretion in binding him over on count I because the evidence showed that he abandoned any crime by attempting to leave the high school.[6]

The prosecution responded that the evidence developed at the preliminary hearing, including the instant

---

[6] On November 29, 2004, defendant filed motions to dismiss the charges, which solely were premised on his computer communications, on the bases that (1) MCL 750.145d is constitutionally vague and overbroad in violation of the First Amendment, and (2) the charges violate his due process and equal protection rights.

messages and the fact that defendant drove to a designated meeting place, established that he used a computer for the purpose of attempting to induce a minor to have oral sex with him. On October 25, 2004, the prosecutor filed a motion to amend the information to reincorporate prior counts II and III, which the district court had dismissed.

On January 4, 2005, defendant filed a motion in limine requesting that the circuit court find inadmissible the printout of instant messages that he exchanged with inozentangel because it did not amount to original evidence and it did not accurately or completely reflect the exchanges. Also on January 4, 2005, defendant filed a motion in limine to preclude the admission of the photograph he had e-mailed because it had minimal probative value and its admission would unfairly prejudice the jury. Defendant additionally moved to dismiss the charge(s) because Gibson had entrapped him by initiating contacts with defendant while posing as a minor.

The circuit court held a series of hearings to address the parties' various motions on January 11, 2005, January 18, 2005,[7] and January 28, 2005. During the final hearing, the circuit court agreed with the district court bindover decisions, reasoning that the separate instant message conversations should be read as one series of discussions creating one offense, so count II had been properly dismissed, and that because no pictures of any children were involved,[8] count III had

---

[7] Pursuant to the circuit court's instruction at the January 18, 2005, hearing, the prosecution filed an amended felony information alleging against defendant only one count of using a computer or the Internet "for the purpose of committing or attempting to commit" CSC III, and a supporting bill of particulars.

[8] The circuit court is not entirely clear in its reasoning on this point, although the outcome is clear enough: "And the reason why I do not find

also been properly dismissed. The court found, as to the remaining charge, that "whether or not there was sufficient behavior on the part of the defendant to meet the attempt as articulated in the wording of the statute" and whether the "affirmative defense of abandonment" is proved are both questions "which should go before the triers of fact . . . ."

With respect to what the prosecution would have to establish to prove the underlying crime of attempted CSC III to establish defendant's guilt under MCL 750.145d(1)(a), the court explained that "the finders of fact would have to decide whether the activity that was conducted was sufficient," but "[i]t's got to be more than just the Internet. Words alone do not constitute the crime. There has to be some action and [sic] furtherance of the words."

On April 7, 2005, the circuit court entered an order denying the prosecution's motion to amend the information and denying defendant's motion to quash the information. The April 7, 2005, order also (1) denied defendant's motion in limine requesting exclusion of the instant message transcripts, explaining that allegations of incompleteness affect the weight of the evidence, not its admissibility, (2) granted defendant's motion in limine seeking exclusion of the prejudicial photograph, (3) denied defendant's motion to dismiss on constitutional grounds, and (4) denied defendant's

it was an abuse of discretion as to count three is because there were no pictures of any child or anything that could have been viewed as a child, and there was no device from which a picture could have been created in the vehicle at the time that the vehicle was stopped, and I also understand at this point that it is possible while you're on the computer that you can send pictures back and forth at the exact same time. All right. And that did not occur as well as it relates to any picture or pictures that were of children or anything that could be viewed as a child."

motion to dismiss on the basis of entrapment because defendant "initially and repeatedly contacted the Inozentangel screen name."

### III. STANDARD OF REVIEW

The prosecution first contends that the circuit court erred in its determination that to prove defendant guilty of using a computer to communicate with a perceived minor for the purpose of attempting or committing CSC III under MCL 750.145d(1)(a), the prosecution must introduce some evidence that defendant attempted the underlying CSC III crime, MCL 750.520d. The prosecution maintains on appeal that defendant "violated [MCL 750.145d(1)(a)] each time he communicated with Inozentangel on line for the purpose of arranging a meeting to have sexual intercourse with [someone] he believed was a minor." Resolution of these questions requires that we engage in statutory construction, which is a legal question that we consider de novo. *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001).

Statutory interpretation is an exercise in reading for plain meaning to give effect to the Legislature's intent; only where the words are ambiguous ought the court look beyond them. *People v Borchard-Ruhland*, 460 Mich 278, 284-285; 597 NW2d 1 (1999). Plain meaning may have a contextual as well as a definitional element: "The fair and natural import of the terms of the statute, in view of the subject matter of the law, is what should govern." *People v Green*, 260 Mich App 710, 715; 680 NW2d 477 (2004).

We note that our review today is of a bindover determination made at a preliminary hearing. "We review a circuit court's decision to grant or deny a motion to quash a felony information de novo to deter-

mine if the district court abused its discretion in ordering bindover." *People v Northey*, 231 Mich App 568, 574; 591 NW2d 227 (1998). A district court must bind over where the prosecutor has presented competent evidence sufficient to support probable cause to find both that a felony was committed and that defendant committed it. *Id.* at 574-575. The prosecutor is not required to prove all elements of the offense charged at the preliminary hearing, but must only produce evidence sufficient for a finding of probable cause. "Probable cause to believe that the defendant committed the crime is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant a cautious person in the belief that the accused is guilty of the offense charged." *People v Woods*, 200 Mich App 283, 288; 504 NW2d 24 (1993). "Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to justify binding over a defendant." *Id.*

### IV. EACH VIOLATION OF § 145d MAY BE CHARGED AS A SEPARATE COUNT

Defendant was charged under MCL 750.145d, which includes the following relevant language:

> (1) A person shall not use the internet or a computer, computer program, computer network, or computer system to communicate with any person for the purpose of doing any of the following:

> (a) Committing, attempting to commit, conspiring to commit, or soliciting another person to commit conduct proscribed under section 145a, 145c, 157c, 349, 350, 520b, 520c, 520d, 520e, or 520g, or section 5 of 1978 PA 33, MCL 722.675, in which the victim or intended victim is a minor or is believed by that person to be a minor.

The first two counts charged were based on the reference in § 145d to MCL 750.520d, CSC III. That statute

provides in pertinent part that "[a] person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and . . . [t]hat other person is at least 13 years of age and under 16 years of age." MCL 750.520d(1)(a).

The required elements of § 145d relevant to the charges against this defendant are: (1) use of the Internet or a computer, (2) intent to attempt to commit conduct proscribed by § 520d (sexual penetration of a person between the ages of 13 and 16), and (3) belief that the intended victim is a minor.[9] The "for the purpose of" language within subsection 145d(1) plainly incorporates into the statute a specific intent requirement: the defendant must communicate via the Internet with a person with the specific intent to commit or attempt the underlying offense. See *People v Evans*, 173 Mich App 631, 634; 434 NW2d 452 (1988) (with respect to assault with intent to commit second-degree CSC, a specific intent crime, the prosecution must show that the defendant assaulted a victim with "the specific intent [to commit acts included in CSC II] . . . for the purpose of sexual arousal or gratification"). In this case, therefore, the prosecution properly can charge defendant under subsection 145d(1)(a) for each instance in which defendant used a computer to communicate with a perceived minor with the specific intent to engage in sexual penetration with someone he believed was between 13 and 16 years of age.

The bill of particulars filed by the prosecution suggested that defendant's correspondences with inozentangel on July 1, 2003, and July 2, 2003, supported the charges in complaint counts I and II respectively. The

---

[9] MCL 750.145d(9)(g) defines "minor" as "an individual who is less than 18 years of age."

instant message log and Deputy Gibson's testimony at the preliminary examination tend to establish that on at least these two specific dates, defendant used a computer and the Internet to communicate with a person defendant believed to be a 14-year-old girl on the basis of her own representations and the photo Gibson e-mailed to defendant. On each of the two specific dates, defendant arranged to meet this perceived minor for the specific purpose that she perform fellatio on defendant. Fellatio is included in the definition of sexual penetration in MCL 750.520a(o), and is therefore prohibited by MCL 750.520d(1)(a). Noting that "circumstantial evidence and reasonable inferences" are sufficient to bind over a defendant, here the content of the instant message conversations on July 1, 2003, and July 2, 2003, reasonably tend to establish that defendant proposed the meetings for the specific purpose, or with the specific intent, to attempt sexual penetration of someone he believed was a 14-year-old girl. *Woods, supra* at 288.

Defendant maintains that the prosecution has failed to present any evidence of an "unambiguous overt act in furtherance of an 'attempt' to sexually penetrate." Defendant refers to MCL 750.92, the general attempt statute, which requires both that the defendant specifically intended to commit the underlying crime and that defendant took some action in furtherance of the underlying crime. *People v Burton*, 252 Mich App 130, 141; 651 NW2d 143 (2002). Defendant's argument is incorrect, however, because the general attempt statute by its own terms limits its applicability to cases in which "no express provision is made by law for the punishment of such attempt . . . ." MCL 750.92. Because MCL 750.145d(1) plainly provides for punishment of "attempting to com-

mit" various specified crimes, the general attempt statute does not apply in this case.[10]

We find that the July 1, 2003, and July 2, 2003, instant message conversations establish probable cause to bind over defendant on two counts of using a computer or the Internet "for the purpose of" "attempting to commit . . . conduct proscribed under" MCL 750.520d, "in which the . . . intended victim is . . . believed . . . to be a minor . . . ." MCL 750.145d(1)(a). The evidence supports a reasonable belief that defendant used a computer or the Internet for the specific purpose, or with the specific intent, to attempt sexual penetration of someone he believed was a 14-year-old girl.[11] Consequently, the circuit court and the district court erred by declining to bind over defendant on count II of the complaint.

### V. SECTION 145d DOES NOT CRIMINALIZE "WORDS ALONE"

Although the circuit court did not expressly invoke the First Amendment, the court did say that "[w]ords

---

[10] See *People v Hall*, 28 Mich App 662, 663; 184 NW2d 742 (1970) (holding that MCL 750.92 was not applicable because MCL 750.131, "the statute under which defendant was convicted, expressly provides for the punishment of the offense of attempting to break, burn, blow-up or otherwise injure or destroy any safe"). To the extent that defendant relies on *People v Meyers*, 250 Mich App 637, 653; 649 NW2d 123 (2002), this Court in that case did not analyze or compare MCL 750.145d with MCL 750.92, but only "assume[d] for the sake of analysis that 'attempts' under MCL 750.145d . . . require the same sort of proof necessary to demonstrate an attempt under MCL 750.92 . . . ." This Court in *Meyers* acknowledged that no Michigan case law "explain[s] whether the attempts . . . [referenced in MCL 750.145d] mirror or differ from attempts under MCL 750.92." *Meyers, supra* at 653.

[11] We agree with the prosecution's suggestion in its bill of particulars that, alternatively, defendant's conduct on July 7, 2003, and early July 8, 2003, also could support a count under MCL 750.145d(1)(a). The chat logs reflect that defendant confirmed the details of the planned sexual encounter and in fact defendant drove to the high school around the agreed upon meeting time that night.

alone do not constitute the crime." We share the court's concern and emphatically add that the right to free expression must be closely guarded against intrusion. However, there is a line between speech and conduct, and another line between protected and unprotected speech, and the facts of this case require us to examine both.

As a threshold matter, the statute at issue does not proscribe words alone, but communication combined with the specific intent to commit or attempt particular crimes against a victim who is or is perceived to be a minor. Defendant is accountable not for his words, but for the act of communicating with a perceived minor with intent to make her the victim of a crime.

In addition, defendant cannot rely on a "words alone" argument because to do so defendant would have to have literally done nothing more than speak to a person he believed to be a 14-year-old girl. The facts here suggest otherwise. Defendant entered a chat room apparently looking for a child to engage in conversation. He singled inozentangel out and sent an instant message. He repeatedly engaged her in e-mail conversations over the course of a week, and he drove to Grosse Pointe to meet with her. Significantly, he did all of this with the specific intent to engage in a sexual encounter with a person he believed to be a child. Here, the content of defendant's speech is more than mere words, because the content of the message combined with the sender's intent together comprise an invitation, and it is the act of issuing that invitation to a person the issuer believes is a child that is proscribed by law. However repugnant his words might be, the operative issue is not what defendant said, it is his act of saying them to a person he believed was a 14-year-old girl with the intent that she would accept his invitation to engage in a sexual encounter.

There are limited situations in which words, given the context and intent behind their use, are themselves overt acts, where speech itself is at the same time conduct.[12] Where speech is an action intended to instigate an illegal act, the context rather than the content can become the issue. A famous example of impermissible context is yelling "fire" in a crowded theater, where the context makes the content unacceptable, and the act of shouting with intent to cause panic makes "fire" more than a mere word. The contexts in which speech is more than words are limited, but they do exist within our legal framework. "That words themselves may be overt acts under some circumstances, in fact overt acts sufficient to constitute crimes, is well settled." *People v Coleman*, 350 Mich 268, 280; 86 NW2d 281 (1957) (affirming a conviction for obstruction of justice where defendant threatened a witness to prevent him from testifying).

To minimize infringement on our fundamental interest in free expression, "a state statute which regulates speech and expression must be narrowly drawn so as not to infringe on constitutionally protected speech." *People v Taravella*, 133 Mich App 515, 519; 350 NW2d 780 (1984). The statute at issue here is tailored specifically to reach only that speech which is coupled with the specific intent to commit particular crimes against children; the state's compelling interest in preventing these crimes weighs heavily against protecting such speech.

While no published decision of a Michigan court addresses this question, courts in several other jurisdictions have upheld similar "child luring" statutes

---

[12] Consider for example the start of every baseball game; when the plate umpire yells "play ball," the speech is not words alone; it is also well recognized as the conduct that starts the game.

against First Amendment challenges. The New York Court of Appeals upheld that state's "child luring" statute, finding that it was "not directed at the mere transmission of certain types of communication over the Internet" because "[a]n invitation or enticement is distinguishable from pure speech." *People v Foley*, 94 NY2d 668, 679; 731 NE2d 123 (2000). That court further noted that "speech used to further the sexual exploitation of children does not enjoy constitutional protection[.]" *Id.* at 683.

The Illinois Court of Appeals similarly rejected the idea of First Amendment protection for a defendant who had engaged in Internet conversation with a person he believed to be a 14-year-old girl for the purpose of arranging a sexual encounter: "It would be impossible for the act of solicitation to occur without the exchange of words between offender and victim, and defendant's 'beliefs' and his discussions with children or those he believes to be children regarding sexual activity do not rise to the level of constitutionally protected speech." *People v Ruppenthal*, 331 Ill App 3d 916, 920; 771 NE2d 1002 (2002).

Federal courts construing federal laws have likewise found no constitutional free speech claim available to protect pedophiles seeking sexual relationships with children via the Internet because the laws are tailored sufficiently narrowly. "Any limited or incidental effect on speech does not infringe on any constitutionally protected rights of adults. Put another way, the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts." *United States v Bailey*, 228 F3d 637, 639 (CA 6, 2000) (interpreting 18 USC 2422[b] as it read then, "Whoever . . . knowingly persuades . . . any individual who has not attained the age of 18 years to engage in . . .

any sexual act for which any person may be criminally prosecuted, or attempts to do so . . . .").

We similarly find no merit in the argument that § 145d might impermissibly burden free speech. Section 145d requires that a defendant send a computer communication with the specific intent to commit, attempt to commit, conspire to commit, or solicit someone else to commit certain conduct with perceived minors. The various enumerated examples of intended conduct within § 145d(1)(a)-(c) all constitute acts that the Legislature already has criminalized. The protection of children from predators plainly qualifies as a compelling state interest, and subsection 145d(1) narrowly affects only those defendants who specifically target children for unlawful purposes. It does not punish those who post messages intended for all Internet users, nor those who inadvertently engage in e-mail conversation with minors. Section 145d criminalizes specific conduct directed toward sexual abuse of children, it does not criminalize words alone or protected expression. Consequently, we conclude that § 145d(1) does not infringe on defendant's federal or state freedom of speech guarantees.[13]

## VI. INTENT TO ATTEMPT TO PRODUCE
## CHILD SEXUALLY ABUSIVE MATERIAL

The prosecution next challenges the circuit court and district court determinations that the evidence at the preliminary examination did not support a charge that

---

[13] We decline to specifically consider defendant's due process and equal protection claims because this appeal is limited to the scope of this Court's order granting leave to appeal, MCR 7.205(D)(4), and defendant has not raised these constitutional issues in a cross-appeal. *Jenkins v Patel*, 256 Mich App 112, 130; 662 NW2d 453 (2003), rev'd on other grounds 471 Mich 158 (2004).

defendant violated MCL 750.145d(1)(a) by attempting to commit conduct proscribed under MCL 750.145c:

> (2) A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony . . . .

MCL 750.145c(1)(m) defines "child sexually abusive material" to include "any depiction . . . which is of a child or appears to include a child engaging in a listed sexual act . . . ." MCL 750.145c(1)(h) defines "listed sexual act" as including "sexual intercourse." And MCL 750.145c(1)(p) in turn defines "sexual intercourse" as including "oral-genital."[14]

When a charged violation of MCL 750.145d is premised on the underlying offense proscribed by MCL 750.145c, the elements of the offense are: (1) that defendant used the Internet or a computer to communicate with any person, (2) for the purpose of attempting to arrange for, produce, or make any child sexually abusive material, and (3) defendant believed that the intended victim in the child sexually abusive activity or material is a minor.

Over the course of the instant messages on July 7, 2003, defendant asked inozentangel if he could videotape their sexual encounter. The evidence tends to establish that defendant used a computer or the Internet to communicate with a person defendant believed

---

[14] At the time of the events at issue here, MCL 750.145c(1)(m) was numbered MCL 750.145(1)(l); MCL 750.145c(1)(h) was numbered MCL 750.145c(1)(g); MCL 750.145c(1)(p) was numbered MCL 750.145(c)(1)(o).

was a 14-year-old girl and supports a reasonable inference that defendant communicated with inozentangel for the purpose of attempting, or with the specific intent to attempt, to arrange for, produce, or make "child sexually abusive material." MCL 750.145c. Noting again that "circumstantial evidence and reasonable inferences" are sufficient to bind over a defendant, the evidence at the preliminary examination here supported a reasonable inference of defendant's guilt under MCL 750.145d(1)(a), premised on conduct proscribed by MCL 750.145c(2); the circuit court and the district court therefore erred by dismissing this third count against defendant. *Woods, supra* at 288.

### VII. EVIDENTIARY RULING ON EXPLICIT PHOTOGRAPH

The prosecution argues that the circuit court erred by granting defendant's pretrial motion in limine to exclude the explicit photograph that defendant had e-mailed to inozentangel.[15] "The decision to admit or exclude photographs is within the sole discretion of the trial court." *People v Mills*, 450 Mich 61, 76; 537 NW2d 909, mod on other grounds 450 Mich 1212 (1995).

The prosecution correctly observes that the photograph, which defendant e-mailed to inozentangel during their first conversation on July 1, 2003, has some probative value because it tends to establish that defendant contacted inozentangel for unlawful sexual purposes. MRE 401. The photograph does not possess significant or substantial probative value, however, but represents only cumulative evidence in light of the printed chat logs, which document defendant's repeated

---

[15] Although the challenged photograph was not provided to this Court, the parties do not appear to challenge the prosecution's description that the photograph "depicted a man's midsection," or that the "man's pants were down and his hand was on his exposed penis."

and express statements indicating sexual intent, and Deputy Gibson's testimonial description of the photograph. Given the insignificant probative value attached to the photograph, and the trial court's opinion that admission of the photograph might unfairly prejudice defendant, we cannot conclude that the circuit court abused its discretion by excluding the photograph pursuant to MRE 403. *Mills, supra* at 76; *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) (a "decision on a close evidentiary question ordinarily cannot be an abuse of discretion").

### VIII. CONCLUSION

We hold today that a defendant may be bound over on a count of violating MCL 750.145d for each instance where there is probable cause based on evidence tending to establish that defendant used the Internet or a computer to communicate with a minor or perceived minor with the specific intent to attempt to commit one of the crimes specified in the statute as applicable underlying offenses. We further hold that MCL 750.145d does not infringe on First Amendment rights because it does not criminalize "words alone"; it criminalizes communication with a minor or perceived minor with the specific intent to make that minor the victim of one of the crimes identified in the statute.

We affirm the circuit court's April 7, 2005, order to the extent that it denies defendant's motion to quash count I and grants defendant's motion in limine seeking exclusion of the photograph. We reverse the circuit court's April 7, 2005, order to the extent it denies the prosecution's motion to amend the complaint to add count II and count III. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.