# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 18, 2016

v

MICHAEL JOSEPH ETTENBERGER,

Defendant-Appellant.

No. 324960
Jackson Circuit Court
LC No. 13-003812 - FH

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions of second-degree criminal sexual conduct, MCL 750.520c; child sexually abusive activity, MCL 750.145c(2); use of the Internet or computer systems to commit specified crimes, MCL 750.145d(2)(f); and possession of child sexually abusive material, MCL 750.145c(4). Because the evidence was sufficient to support defendant's convictions and the trial court properly denied defendant's motion for a directed verdict, we affirm.

According to the evidence introduced at trial, in 2012, defendant met a woman named Jill Miller online through a social media website. Defendant and Miller never met in person, but they had numerous discussions online, through email, and via telephone and text messaging. Many of these conversations were sexual in nature and, in particular, they repeatedly discussed sexual contact with children. At that time, Miller had four children of her own, including a nine-year-old daughter, the victim in this case. Miller told defendant about her daughter, including facts such as her daughter's age and interests. At defendant's behest, Miller then began sending defendant sexual photographs and sexual video of the victim. Miller testified at trial regarding her conversations with defendant and the materials she provided to defendant.[1] In addition, police found a video of the victim in defendant's email account. Although it could not be determined from analysis of defendant's electronic devices whether defendant viewed the video, defendant described the contents of the video to police. More generally, in his statement to

---

[1] Miller pled guilty to second-degree criminal sexual conduct, MCL 750.520c; production of criminally abusive material, MCL 750.145c(2); and using a computer or Internet to commit a specified crime, MCL 750.145d. Her parental rights to her children were also terminated.

police, defendant also acknowledged that Miller sent him photographs and video of the victim. Defendant also stated that he asked Miller to "send more" images of the victim after receiving the video, and he admitted that he was "driving" the "sexually orientated conversations" about the victim.

Defendant was charged with four counts: (1) second-degree CSC, (2) child sexually abusive activity, (3) use of the Internet or computer systems to commit specified crimes, and (4) possession of child sexually abusive material. At trial, the prosecutor argued that, although defendant had not touched the victim in a sexual manner or participated in the production of the child sexually abusive material, defendant was nonetheless guilty of second-degree CSC and the production of child sexually abusive material as an aider and abettor. With regard to possession of sexually abusive material and use of a computer or the Internet to commit a crime, the prosecutor asserted that defendant was guilty as a principal. The jury convicted defendant of all charges. Defendant now appeals as of right.

On appeal, defendant challenges the sufficiency of the evidence supporting his convictions and he maintains that the trial court erred by denying his request for a directed verdict. Specifically, defendant concedes that he had "perverse fantasies," which he communicated to Miller and others via the Internet. But, according to defendant, the mere discussion of such fantasies cannot be equated with guilt of the crimes charged, even under an aiding and abetting theory. Defendant also asserts that searches of his electronic devices failed to reveal child pornography, that his knowledge of the video of the victim could have arisen by accidentally opening the link without knowledge of its contents, that there was no documentation of the conversations in which he encouraged Miller to create and send child sexually abusive materials, and that Miller's recollections were unreliable due to her intoxication and her desire to minimize her role in the abuse of her own daughter. Given this purported lack of evidence, defendant argues that, at most, he engaged in discussions of his prurient sexual fantasies, which he contends is insufficient to support his convictions of the crimes charged. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). This Court will "not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Rather, "a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Nowack*, 462 Mich at 400. We review the trial court's decision on a motion for directed verdict under the same standard of review as a challenge to the sufficiency of the evidence. *People v Lewis (On Remand)*, 287 Mich App 356, 365; 788 NW2d 461 (2010), aff'd in part, vacated in part on other grounds 490 Mich 921 (2011).

In this case, considering each of the four crimes at issue, we conclude that the prosecutor presented sufficient evidence to support each of defendant's convictions.

First, there was sufficient evidence to support defendant's conviction of second-degree CSC as an aider and abettor. Under MCL 767.39, "[a] person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense." *People v Izarraras-Placante*, 246 Mich App 490, 495; 633 NW2d 18 (2001). To establish that a defendant aided and abetted a crime, the prosecutor must show that:

> (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*People v Carines*, 460 Mich 750, 757-758; 597 NW2d 130 (1999) (citation omitted).]

An actor need not be present at the scene when the crime is committed to be found guilty as an aider and abettor. *People v Hodo*, 51 Mich App 628, 635; 215 NW2d 733 (1974). Rather, the phrase "aids or abets" encompasses "any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). "In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime." *Id.* at 71. Further, "[a]n aider and abettor's state of mind may be inferred from all the facts and circumstances." *Carines*, 460 Mich at 758 (citation omitted).

In this case, it is clear that a crime—namely, second-degree CSC—was committed by Miller. Second-degree CSC requires the prosecution to prove that the "person engage[d] in sexual contact with another person and . . . [t]hat other person is under 13 years of age." MCL 750.520c(1)(a). Sexual contact includes "intentional touching of the victim's intimate parts," including the genital area and buttocks, "if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for" revenge, to inflict humiliation, or out of anger. MCL 750.520a(f); MCL 750.520a(q). In this case, defendant does not dispute that Miller committed second-degree CSC. And, in any event, Miller pled guilty to second-degree CSC, there was video and photographic evidence of Miller's conduct, and Miller testified about her intentional touching of the minor victim's intimate parts, which could reasonably be construed as being done for sexual arousal or gratification. Thus, the jury could reasonably conclude beyond a reasonable doubt that Miller committed second-degree CSC.

The evidence also supports the conclusion that defendant aided and abetted Miller's commission of second-degree CSC and that he intended the commission of this crime. Miller testified that she and defendant engaged in numerous discussions about sexual contact with children and that, most importantly, defendant made numerous requests for sexually explicit depictions of Miller and the victim. During these conversations, defendant also told Miller that he sexually desired the victim, and he specifically asked Miller to photograph or video record herself touching the victim in a "sexual way." In his conversations with police, defendant admitted that he was the one "driving" the sexual conversations about the victim and that he asked Miller to send "more" images of the victim after Miller sent video footage of Miller sexually touching the victim. Additionally, defendant told police that he was "addicted to

-3-

pornography," and the prosecutor presented evidence of defendant's various online postings, broadcasting defendant's interest in "taboo porn," seeking out others who "fantasize" about "daughters, nieces, [and] students," and expressing a desire to meet up with other like-minded individuals to "watch porn" and "make each other's fantasies come true."

From this evidence, the jury could reasonably conclude that defendant did more than discuss sexual fantasies with Miller. That is, this evidence supports the inference that defendant encouraged, and intended for, Miller to engage in sexual contact with a minor for the purpose of providing defendant with footage of that conduct. Consequently, based on the evidence presented, the jury could reasonably conclude that defendant encouraged Miller in the commission of second-degree CSC and that defendant intended Miller to commit the crime. See *Moore*, 470 Mich at 63, 72. Insofar as defendant challenges the credibility of Miller's recollections and emphasizes that there is no documentation of his requests for sexual materials involving the victim, Miller's credibility and the weight to be afforded the evidence was a question for the jury. *Dunigan*, 299 Mich App at 582; *People v Heikkinen*, 250 Mich App 322, 327; 646 NW2d 190 (2002). Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for the jury to find beyond a reasonable doubt that defendant was guilty of second-degree CSC under an aiding and abetting theory.

Similarly, there was sufficient evidence to support defendant's conviction of child sexually abusive activity as an aider and abettor under MCL 750.145c(2). Under MCL 750.145c(2):

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, copies, reproduces, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material for personal, distributional, or other purposes is guilty of a felony. . . if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

" 'Child sexually abusive activity' means a child engaging in a listed sexual act." MCL 750.145c(1)(n). And, "child sexually abusive material" means "any depiction," including video and photographs, of a child engaging in a listed sexual act. MCL 750.145c(1)(m). "Erotic fondling" is a listed sexual act which includes "touching a person's clothed or unclothed genitals, pubic area . . . [or] buttocks." MCL 750.145c(1)(g) and (i).

In this case, defendant does not challenge that the charged offense was committed by Miller, Miller pled guilty to this offense, and Miller testified that she photographed and video recorded herself touching the buttocks and genitals of the victim, whom she knew to be a child. Clearly, Miller's conduct constituted a violation of MCL 750.145c(2). With respect to whether defendant aided and abetted Miller's child sexually abusive activity, evidence was presented that defendant's words encouraged, supported, or incited Miller's actions, *Moore*, 470 Mich at 63,

and that defendant intended that Miller commit the crime, *Carines*, 460 Mich at 757-758. In particular, as discussed, Miller testified that defendant repeatedly requested sexually explicit photographs or videos of her and the victim, whom defendant knew to be a minor, and that Miller committed the crime at defendant's request. Thus, the jury could reasonably infer from defendant's communications with Miller that defendant encouraged and intended Miller's commission of the crime. *Moore*, 470 Mich at 63. Therefore, at a minimum, there was sufficient evidence for the jury to convict defendant of child sexually abusive activity under an aiding and abetting theory.

Next, contrary to defendant's arguments, the prosecutor also presented sufficient evidence to support defendant's conviction under MCL 750.145d for using the Internet or computer systems to commit specified crimes. The elements of this offense are: (1) use of the Internet or a computer; (2) intent to attempt, conspire, or solicit another to commit a specified crime, in this case, conduct proscribed by MCL 750.145c (child sexually abusive activity or material) and MCL 750.520c (criminal sexual conduct in the second degree); and (3) belief that the intended victim is a minor. See *People v Cervi*, 270 Mich App 603, 617; 717 NW2d 356 (2006). As used in MCL 750.145d, the term "computer" includes, among other devices, "a cellular telephone." MCL 750.145d(9)(a).

As discussed, the evidence in this case showed that defendant communicated with Miller online and via telephone, and that defendant requested that Miller send him sexually explicit materials of Miller touching the victim, whom defendant knew to be a minor. From this evidence, the jury could conclude that defendant used a computer with the intent to solicit Miller's commission of child sexually abusive activity and second-degree CSC. See MCL 750.145d(1)(a). In contrast, defendant argues that there was insufficient evidence presented to support his conviction because there were no telephone records of his communication with Miller. Although it appears that there was not documentation of every electronic communication between defendant and Miller, it is nonetheless true that some evidence of defendant and Miller's electronic communication was uncovered. Moreover, Miller testified that they conducted their whole relationship using electronic communications and that defendant made his requests during these electronic communications. While defendant challenges Miller's credibility, this was a question for the jury. *Dunigan*, 299 Mich App at 582; *Heikkinen*, 250 Mich App at 327. Ultimately, given Miller's testimony that she and defendant communicated using their cellular telephones, email, and online messaging, the jury could find defendant guilty beyond a reasonable doubt, even without supporting telephone records. See *Heikkinen*, 250 Mich App at 327 ("A jury may convict on the basis of accomplice testimony alone.").

Lastly, we also conclude that the prosecutor presented sufficient evidence to support defendant's conviction of possession of child sexually abusive material. Under MCL 750.145c(4):

> A person who knowingly possesses or knowingly seeks and accesses any child sexually abusive material is guilty of a felony . . . if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

For purposes of this provision, "[c]hild sexually abusive material" means "any depiction," including video and photographs, of a child engaging a listed sexual act. MCL 750.145c(1)(m). Possession of child sexually abusive material may be actual or constructive. *People v Flick*, 487 Mich 1, 4; 790 NW2d 295 (2010). A defendant is in constructive possession of sexually abusive material when he "knowingly [has] the power and the intention at a given time to exercise control or dominion over the contraband depictions of child sexually abusive material." *Id.* at 4, 16. "By contrast, if a person accidentally views a depiction of child sexually abusive material on a computer screen, that person does not 'knowingly possess' any child sexually abusive material in violation of MCL 750.145c(4)." *Id.* at 19. Mere accidental viewing may be distinguished from knowing possession by the "many intentional affirmative steps taken by the defendant to gain actual physical control, or to knowingly have the power and the intention at a given time to exercise dominion or control over the contraband either directly or through another person or persons." *Id.* at 18. "Possession can be established with circumstantial or direct evidence, and the ultimate question of possession is a factual inquiry to be answered by the jury." *Id.* at 14 (citation and quotation marks omitted).

In this case, a video and photographs constituting child sexually abusive material were sent to defendant's email address by Miller at defendant's request. Defendant viewed the video, as evident of his description of the video's contents to police, and police recovered the video in an email account belonging to defendant. Nonetheless, defendant argues on appeal that, because the video sent by Miller was entitled simply "vid," his viewing of child sexually abusive materials could have been accidental and thus he argues that he did not "knowingly possess" these materials as prohibited by MCL 750.145c(4). As we have discussed, the evidence presented at trial reasonably gives rise to the inference that defendant not only viewed sexually abusive material, but that he in fact asked Miller to create child sexually abusive material depicting the victim and to then send those materials to defendant. This conduct by defendant plainly evinces "intentional affirmative steps" taken by defendant "to gain access and control over child sexually abusive material," and these efforts wholly belie any claim that his viewing of the sexually abusive material was merely accidental. See *Flick*, 487 Mich at 16. Indeed, we note that after obtaining the video, by his own admission, defendant even requested that Miller send "more" images of the victim. Moreover, while defendant asserts the possibility that he initially viewed the video accidentally, the fact remains that, after defendant saw the video, it remained in an email account under defendant's control, such that defendant plainly had the power to save the video, share it, post it on a website, email it, etc. Cf. *id.* at 17. This continued control and dominion over the video serves as further proof of defendant's possession. See *id.* On the whole, from Miller's testimony, defendant's interview, and evidence of defendant's various online communications presented at trial, the jury could infer that defendant had the requisite knowledge to exercise control or dominion over the video. Thus, the evidence was sufficient to support defendant's conviction for the possession of child sexually abusive materials.

For the aforementioned reasons, we also conclude that the trial court did not err by denying defendant's motion for directed verdict. The evidence presented could, and did, persuade, "a rational trier of fact that the essential elements of the crime[s] charged were proved beyond a reasonable doubt." See *People v Parker*, 288 Mich App 500, 504; 795 NW2d 596 (2010).

Affirmed.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly