*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

ANTHONY QUINN LAVALLIS,

      Defendant-Appellee.

UNPUBLISHED
March 5, 2019

No. 340829
Oakland Circuit Court
LC No. 2017-160175-AR

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

The prosecution appeals by leave granted the circuit court's order denying the prosecution's delayed application for leave to appeal to that court the district court's orders dismissing defendant's charges of resisting and obstructing a police officer, MCL 750.81d(1), and operating a motor vehicle without a valid license, MCL 257.301(1). We reverse.

## I. FACTS

This case arises from a traffic stop. On March 22, 2017, Oakland County Sheriff's Deputy Brandon DeVita was on routine patrol in the city of Pontiac when he followed a vehicle and ran the vehicle's license plate number in the Law Enforcement Information Network (LEIN) system as a matter of routine. He received a response indicating that the registered owner of the vehicle had a suspended driver's license and that the vehicle was uninsured.

Defendant was driving the vehicle.[1] According to DeVita's dashcam video and DeVita's testimony at the preliminary examination, DeVita followed the vehicle for a short distance until the vehicle turned into a driveway without using a turn signal. DeVita activated his overhead lights and parked directly behind the vehicle, then approached the driver's door of the vehicle. DeVita testified that upon approaching the vehicle, defendant immediately began to argue with

---

[1] Defendant apparently is not the owner of the vehicle.

him regarding why DeVita had stopped him, and would not listen when the officer attempted to explain the reason for the stop. DeVita explained that the LEIN records had indicated that the vehicle was not insured. He then asked defendant for his driver's license and for the vehicle's proof of insurance, to which defendant responded that he did not have a driver's license, nor did he have other proof of identification.

Devita asked defendant to step out of the vehicle because he was under arrest for driving without a license. In response, defendant rolled up the windows, locked the car doors, and started the engine. Deputy Kyle Lindsey had been traveling behind DeVita in a police car and stopped to assist DeVita. DeVita and Lindsey pointed tasers at defendant and ordered him out of the vehicle. At that point, defendant reached behind the passenger seat, and DeVita unholstered his gun and pointed it at defendant. DeVita warned defendant to keep his hands where they could be seen. Defendant refused to get out of the vehicle, moved around the vehicle without keeping his hands in sight, began recording DeVita with his cell phone, began beeping the horn, put the car in gear, and began "revving" the engine.

After defendant continued to disobey commands to get out of the vehicle, the officers broke the car window with a baton, at which point defendant said "okay, okay" and unlocked the door, but continued to refuse to get out of the car. Defendant struggled with the officers as they pulled him out of the car and onto the ground. Another deputy arrived, and after a struggle, the three deputies were able to handcuff defendant. Defendant then refused to get inside the police car. After the officers physically placed defendant in the police car, defendant apologized, provided his name, and stated that he had an outstanding Friend of the Court warrant. DeVita then verified that defendant did not have a valid driver's license and that there was an outstanding Friend of the Court warrant for defendant's arrest.

Defendant was charged with resisting and obstructing a police officer, MCL 750.81d(1), and operating a motor vehicle without a valid license, MCL 257.301(1). During the preliminary examination, the district court asked the officer during his testimony what induced him to run a LEIN check of the license plate of the vehicle defendant was driving. DeVita responded that he frequently runs license plate numbers while on patrol, and nothing specifically had caused him to run the license plate number of defendant's vehicle. At the conclusion of the preliminary examination, the district court declined to bind defendant over on the charges. Although the district court's reasoning is not entirely clear, the district court apparently determined that the basis of the stop was unlawful because the officer did not have probable cause to believe that defendant had violated the law before he ran the LEIN check. The district court entered orders dismissing the charges on May 2, 2017.

On August 4, 2017, the prosecutor filed a delayed application for leave to appeal with the circuit court, explaining that the reason for the delay in seeking the appeal was that the prosecutor's case file mistakenly had been returned to the office's records division before appropriate personnel could consider the matter for appeal. The circuit court denied the prosecution's delayed application for leave to appeal to that court, finding that the delay in seeking leave to appeal had been unreasonable under MCR 7.105(G)(1).

The prosecution sought leave to appeal to this Court, arguing that the district court's determination directly contravenes *People v Jones*, 260 Mich App 424; 678 NW2d 627 (2004).

This Court granted the prosecution leave to appeal. *People v Lavallis*, unpublished order of the Court of Appeals, entered March 28, 2018 (Docket No. 340829).

## II. DISCUSSION

The prosecution contends that the district court abused its discretion in failing to bind over defendant to the circuit court on the charges, arguing that the district court erroneously determined that the officer conducted an unreasonable search by checking the vehicle's license plate number on LEIN without probable cause. We agree.

## A. STANDARD OF REVIEW

We note initially that the circuit court declined to grant the prosecution's delayed application for leave to appeal under MCR 7.105(G), concluding that an unreasonable period of time had passed. We review the decision of a circuit court to grant or deny a delayed application for leave to appeal for an abuse of discretion. *Teddy 23, LLC v Michigan Film Office*, 313 Mich App 557, 564; 884 NW2d 799 (2015); *People v Flowers*, 191 Mich App 169, 172; 477 NW2d 473 (1991). Here, the district court entered its orders dismissing the charges on May 2, 2017. On August 4, 2017, the prosecution sought delayed leave to appeal, resulting in a delay of approximately two months after the initial appeal period had expired. There is no indication that this delay in seeking review of the district court's decision prejudiced defendant, nor that the delay was for any improper purpose. Further, our review of the record indicates that the district court erred as a matter of law in declining to bind over defendant to the circuit court on the basis that the LEIN check was an unreasonable search, necessitating review to correct the error. We therefore conclude that under the circumstances of this case, the circuit court abused its discretion by declining to grant the prosecution's delayed application for leave to appeal.

With regard to the underlying decision of the district court, this Court reviews a district court's decision regarding whether to bind over a defendant for an abuse of discretion. *People v Shami*, 501 Mich 243, 251; 912 NW2d 526 (2018). The district court abuses its discretion when its decision "falls outside the range of principled outcomes." *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016) (quotation marks and citation omitted). When a trial court makes an error of law, it necessarily abuses its discretion. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

## B. PRELIMINARY EXAMINATION

A preliminary examination is conducted to determine whether probable cause exists to believe that the defendant committed a crime. *People v Bennett*, 290 Mich App 465, 480; 802 NW2d 627 (2010). To find probable cause requires sufficient evidence of each element of the crimes charged, or evidence from which each element may be inferred, sufficient to "cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the defendant's guilt." *Shami*, 501 Mich at 251 (quotation marks and citations omitted). The elements may be established sufficiently by circumstantial evidence, and reasonable inferences arising from the evidence, to justify binding over a defendant. *People v Woods*, 200 Mich App 283, 288; 504 NW2d 24 (1993). When the prosecution has presented competent evidence sufficient to support probable cause that the felony was committed and that the defendant

committed it, the district court is required to bind the defendant over to the circuit court for trial. *People v Cervi*, 270 Mich App 603, 616; 717 NW2d 356 (2006).

In this case, defendant was charged with resisting and obstructing a police officer, MCL 750.81d(1), which requires the prosecution to demonstrate that (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, (2) the defendant knew or had reason to know that the person was a police officer performing his or her duties, and (3) the officer's actions were lawful. *People v Quinn*, 305 Mich App 484, 491-492; 853 NW2d 383 (2014). Defendant was also charged with operating a motor vehicle without a valid license, MCL 257.301(1). Despite the evidence presented that defendant did, in fact, commit these offenses, the district court in this case declined to bind over defendant to the circuit court, apparently concluding that the officer had conducted an unreasonable search by checking the license plate number of the vehicle defendant was driving without probable cause to believe that defendant had committed a crime.

The United States and Michigan Constitutions protect individuals from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Henry (After Remand)*, 305 Mich App 127, 137; 854 NW2d 114 (2014). This Court has held that stopping a vehicle and detaining the occupants is considered a seizure. *People v Simmons*, 316 Mich App 322, 326; 894 NW2d 86 (2016). However, the protection against unreasonable searches is implicated only when government action infringes upon a person's reasonable expectation of privacy. *People v Jones*, 260 Mich App 424, 428-429; 678 NW2d 627 (2004). This Court has specifically held that a person does not have a reasonable expectation of privacy in a license plate openly displayed on a vehicle. *Id*. at 429. Thus, "[a] police officer may properly run a computer check of a license plate number in plain view even if no traffic violation is observed and there is no other information to suggest that a crime has been or is being committed." *Id*. at 427-428. The district court in this case therefore erred in determining that the officer conducted an unreasonable search when he ran a computer check of the license plate number of the car defendant was driving without probable cause to believe defendant had committed a crime.

Once the officer in this case determined from LEIN that the vehicle was uninsured and that the owner of the vehicle did not have a valid driver's license, the officer was justified in stopping defendant. Police are only required to have reasonable suspicion of criminal activity when conducting a valid traffic stop, *People v Maggit*, 319 Mich App 675, 692; 903 NW2d 868 (2017), and the criminal activity suspected may include violation of a traffic law, *Simmons*, 316 Mich App at 326. When, as here, a LIEN check reveals that a car is uninsured and that the registered owner does not have a valid driver's license, the officer has reasonable suspicion sufficient to justify stopping the vehicle. See *People v Mazzie*, __ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 343380), slip op at 7.

Defendant argues that the officer did not have adequate time to run the vehicle's license plate number through LEIN, suggesting that the officer did not conduct the LEIN check before stopping defendant. However, DeVita testified that he can run a license plate number through LEIN "in about 10 seconds." The officer's in-car video recording shows him following behind

defendant's vehicle for roughly 30 seconds, and for approximately 15 to 20 seconds of this time he arguably was close enough to read the license plate on defendant's vehicle,[2] before defendant turned into the driveway, supporting the argument that the officer had sufficient time to check the license plate number through LEIN. Further, a review of the officer's in-car recording shows that immediately upon walking up to the driver's side of defendant's vehicle, the officer explained to defendant that his check of the license plate number indicated that the vehicle was uninsured, suggesting that the officer had, in fact, checked the license plate number on LEIN before stopping defendant. [3] In any event, when evidence at a preliminary examination conflicts, the defendant should be bound over for resolution of such issues by the trier of fact. See *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009).

Because the officer obtained the information that the vehicle was uninsured and the vehicle's owner did not have a valid license, the officer had reasonable suspicion to believe that defendant was committing traffic violations, justifying the officer's stop of defendant's vehicle. *Maggit*, 319 Mich App at 692. The district court's determination that there was no basis for the officer's stop of defendant's vehicle was erroneous as a matter of law, *Duncan*, 494 Mich at 723, and the district court therefore abused its discretion by dismissing the charges on that basis.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Michael F. Gadola

---

[2] The quality of the dashcam video does not permit a more precise determination.

[3] We also note that DeVita stopped defendant after observing a traffic violation, being the unsignaled turn, which gave him an objective and reasonable ground to stop the vehicle. Any subjective intent by the officer was irrelevant in this case, see *Whren v United States*, 517 US 806, 813; 116 S Ct 1769; 135 L Ed 2d 89 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"), and his observation of the unlawful turn provided probable cause to stop defendant, see *id*. at 810 ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred").