

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**NO. PD-1560-12**

---

## EX PARTE JOHN CHRISTOPHER LO

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS HARRIS COUNTY

---

**COCHRAN, J., delivered the opinion of the unanimous Court.**

O P I N I O N

Appellant was charged with the third degree felony of communicating in a sexually explicit manner with a person whom he believed to be a minor with an intent to arouse or gratify his sexual desire.[1] He filed a pretrial application for a writ of habeas corpus alleging that this specific subsection of the felony offense of online solicitation of a minor is facially

---

[1] TEX. PENAL CODE § 33.021(b)(1). The indictment in this case read, in pertinent part, that "on October 31st, 2009, the defendant did then and there unlawfully with the intent to arouse and gratify the sexual desire of the defendant, intentionally communicate in a sexually explicit manner with [the complainant], an individual whom the defendant believed to be younger than 17 years of age, by text message and that the defendant was at that time more than 17 years of age."

unconstitutional[2] for three distinct reasons: (1) it is overbroad and criminalizes a wide range of speech protected by the First Amendment; (2) it is vague because the term "sexually explicit" communications that "relate to" sexual conduct chills the exercise of free-speech by causing citizens to steer wide of the uncertain boundaries between permitted and prohibited speech; and (3) it violates the Dormant Commerce Clause. The trial judge denied relief, and the court of appeals affirmed.[3] We granted discretionary review to determine, as a matter of first impression,[4] whether Section 33.021(b)–the "sexually explicit communications" provision–is facially unconstitutional.[5]

Because the court of appeals used the wrong standard of review for addressing constitutional challenges to a penal statute that restricts speech based on its content, it reached the wrong conclusion. Applying the constitutionally required presumption that "content-based regulations [of speech] are presumptively invalid"[6] and subject to strict

---

[2] Because appellant makes a facial challenge to Section 33.021(b), the specific facts of his case are irrelevant. It is only when a person makes an "applied challenge" that the facts of the case matter.

[3] *Lo v. State*, 393 S.W.3d 290 (Tex. App.–Houston [1st Dist.] 2011).

[4] *See* TEX. R. APP. P. 66.3(b) (one reason for granting review is to decide "whether a court of appeals has decided an important question of state or federal law that has not been, but should be, settled by the Court of Criminal Appeals").

[5] Appellant's sole ground for review reads, "The First Court of Appeals erred when it held that section 33.021 of the Texas Penal Code, the Online Solicitation of a Minor statute, is constitutional."

[6] *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).

scrutiny,[7] we conclude that Section 33.021(b) of the Texas Penal Code is overbroad because it prohibits a wide array of constitutionally protected speech and is not narrowly drawn to achieve only the legitimate objective of protecting children from sexual abuse. We need not, therefore, address whether the provision is also unconstitutionally vague or violates the Dormant Commerce Clause.

I.

**A. The Standard of Review**

Whether a statute is facially constitutional is a question of law that we review *de novo*.[8] When the constitutionality of a statute is attacked, we usually begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily.[9] The burden normally rests upon the person challenging the statute to establish its unconstitutionality.[10] However, when the government seeks to restrict and punish speech

---

[7] *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000) ("a content-based speech restriction" may stand "only if it satisfies strict scrutiny").

[8] *See Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007) (*de novo* review of ruling on motion to quash indictment based on claim that statute was facially unconstitutional); *Byrne v. State*, 358 S.W.3d 745, 748 (Tex. App.–San Antonio 2011, no pet.) ("Questions concerning the constitutionality of a criminal statute are likewise reviewed de novo."); *Lawson v. State*, 283 S.W.3d 438, 440 (Tex. App.–Fort Worth 2009, pet. ref'd); *State v. Salinas,* 982 S.W.2d 9, 10–11 (Tex. App.–Houston [1st Dist.] 1997, pet. ref'd); *see also United States v. Snarr*, 704 F.3d 368, 398 (5th Cir. 2013) ("Constitutional challenges to federal statutes are reviewed de novo.").

[9] *Rodriguez v. State,* 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).

[10] *Id.*

based on its content, the usual presumption of constitutionality is reversed.[11] Content-based

regulations (those laws that distinguish favored from disfavored speech based on the ideas

expressed)[12] are presumptively invalid, and the government bears the burden to rebut that

presumption.[13] The Supreme Court applies the "most exacting scrutiny to regulations that

suppress, disadvantage, or impose differential burdens upon speech because of its content."[14]

To satisfy strict scrutiny, a law that regulates speech must be (1) necessary to serve

a (2) compelling state interest and (3) narrowly drawn.[15] A law is narrowly drawn if it

---

[11] *Playboy,* 529 U.S. at 817 ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *see Ex parte Nyabwa*, 366 S.W.3d 719, 724 (Tex. App.–Houston [14th Dist.] 2011, pet. ref'd) (citing *Playboy* in stating, "when the government seeks to restrict speech based on its content, the usual presumption of constitutionality afforded legislative enactments is reversed.").

[12] *Turner Broadcasting Sys., Inc. v. FCC,* 512 U.S. 622, 643 (1994). If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based. *Gresham v. Peterson,* 225 F.3d 899, 905 (7th Cir. 2000). For example, if a statute makes it a crime for an adult to communicate with a minor via the internet, that is a content-neutral law. But if the statute prohibits an adult from communicating with a minor in a sexually explicit manner, that is a content-based law because one has to look at the content of the communication to decide if the speaker violated the law.

[13] *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004) (*Ashcroft II*) ("Content-based prohibitions, enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people. To guard against that threat the Constitution demands that content-based restrictions on speech be presumed invalid, and that the Government bear the burden of showing their constitutionality.") (citation omitted).

[14] *Turner Broadcasting,* 512 U.S. at 642.

[15] *Sable Communications of California, Inc. v. FCC*, 492 U.S. 115, 126 (1989). In *Sable*, the Supreme Court explained,
> "The Government may . . . regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest. We have recognized that there is a compelling interest in protecting the physical and psychological well-being of minors. This interest

employs the least restrictive means to achieve its goal and if there is a close nexus between the government's compelling interest and the restriction.[16]  If a less restrictive means of meeting the compelling interest could be at least as effective in achieving the legitimate purpose that the statute was enacted to serve, then the law in question does not satisfy strict scrutiny.[17]  Furthermore, when the content of speech is the crime, scrutiny is  strict because, "as a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."[18]

In this case, the court of appeals mistakenly applied the usual standard of review,

---

> extends to shielding minors from the influence of literature that is not obscene by adult standards. The Government may serve this legitimate interest, but to withstand constitutional scrutiny, "it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms.  It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends.

*Id.* (citations omitted).

[16] *See Denver Area Educational Telecommunications Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 755-56 (1996).  According to the Supreme Court in *Ashcroft II*,

> The purpose of the [least restrictive means] test is to ensure that speech is
> restricted no further than necessary to achieve the goal, for it is important to assure that legitimate speech is not chilled or punished. For that reason, the test does not begin with the status quo of existing regulations, then ask whether the challenged restriction has some additional ability to achieve Congress' legitimate interest. Any restriction on speech could be justified under that analysis. Instead, the court should ask whether the challenged regulation is the least restrictive means among available, effective alternatives.

*Ashcroft II*, 542 U.S. at 666.

[17] *See Reno v. A.C.L.U.,* 521 U.S. 844, 874 (1997).

[18]  *Ashcroft v. A.C.L.U.*, 535 U.S. 564, 573 (2002) (*Ashcroft I*) (quotation marks omitted).

including the presumption of the statute's validity,[19] instead of the presumption-of-*invalidity*

standard of review for First Amendment, content-based statutes.

First, we examine what the statute prohibits and what is its expressed legislative

purpose.

**B.      Section 33.021 of the Texas Penal Code**

*1.      Section 33.021(c): Solicitation of a Minor.*

Section 33.021 of the Texas Penal Code is titled "Online Solicitation of a Minor."  It

includes subsection (c)–a provision that prohibits and punishes an actor who uses electronic

communications to "solicit" a minor, "to meet another person, including the actor, with the

intent that the minor will engage in" certain sexual behavior.[20]  Such solicitation statutes exist

in virtually all states and have been routinely upheld as constitutional because "offers to

engage in illegal transactions [such as sexual assault of a minor] are categorically excluded

from First Amendment protection."[21]  Thus, it is the *conduct* of requesting a minor to engage

---

[19] *Lo*, 393 S.W.3d at 292-93 ("When presented with a challenge to the constitutionality of a statute, we presume that the statute is valid and the legislature has not acted unreasonably or arbitrarily.  The party challenging the statute carries the burden to establish its unconstitutionality.") (citation omitted).

[20] TEX. PENAL CODE § 33.021(c).  That provision reads,
A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

[21] *United States v. Williams,* 553 U.S. 285, 297 (2008); *see, e.g., United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime.");

in illegal sexual acts that is the gravamen of the offense. The First Court of Appeals previously upheld the constitutionality of the Texas online-solicitation-of-minors statute.[22] That specific provision is not at issue in this case, but it provides an excellent contrast to the provision that is at issue.

2.    *Section 33.021(b): Sexually Explicit Communications.*

Article 33.021 contains a separate, very different, subsection (b), that prohibits and punishes speech based on its content.[23]    That subsection prohibits a person from

---

*United States v. Dhingra*, 371 F.3d 557, 559 (9th Cir. 2004) (federal statute prohibiting online solicitation of a minor is not facially overbroad or vague; statute regulates conduct, not speech—"'no otherwise legitimate speech is jeopardized by [the federal statute] because the statute only criminalizes conduct, i.e., the targeted inducement of minors for illegal sexual activity'—and that 'speech is merely the vehicle through which a pedophile ensnares the victim.'"); *United States v. Bailey,* 228 F.3d 637, 639 (6th Cir. 2000) (statute proscribing knowing efforts to persuade minors to engage in illegal sexual activity did not violate First Amendment); *State v. Snyder,* 801 N.E.2d 876, 883 (Ohio Ct. App. 2003) (statute prohibiting adults from using telecommunications device to solicit minor for sexual activity is not "aimed at the expression of ideas or beliefs, rather it is aimed at prohibiting adults from taking advantage of minors and the anonymity and ease of communicating through telecommunications devices, especially the Internet and instant messaging devices, by soliciting minors to engage in sexual activity"); *see generally* 15B Am. Jur. 2d *Computers and the Internet* § 16 (2013) ("Solicitation of Children for Sex Acts").

[22] *Maloney v. State*, 294 S.W.3d 613, 625-29 (Tex. App.–Houston [1st Dist.] 2009, pet. ref'd) (rejecting defendant's overbreadth and vagueness challenges to online-solicitation-of-minor statute set out in section 33.021(c)).

[23] Section 33.021(b) states:
A person who is 17 years of age or older commits an offense if, with the intent to arouse or gratify the sexual desire of any person, the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, intentionally:

(1) communicates in a sexually explicit manner with a minor; or
(2) distributes sexually explicit material to a minor.

TEX. PENAL CODE § 33.021(b).

communicating online in a "sexually explicit" manner with a minor if the person has the intent to arouse and gratify anyone's sexual desire. According to the statute, "'[s]exually explicit' means any communication, language, or material, including a photographic or video image, that relates to or describes sexual conduct."[24] The statute bars explicit descriptions of sexual acts, but it also bars any electronic communication or distribution of material that "relates to" sexual conduct. That bar would encompass many modern movies, television shows, and "young adult" books, as well as outright obscenity, material harmful to a minor, and child pornography.

### 3. The Legislative Purpose of Section 33.021.

The online-solicitation statute was enacted in 2005. As the State notes,[25] the legislative purpose of that provision was to "allow for the filing of charges against individuals who engage in conversations over the Internet with the intent of meeting the child for sexual activity before any physical contact takes place."[26] It is directed against those who

---

[24] TEX. PENAL CODE § 33.021(a)(3). "'Sexual conduct' means sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." Id. § 43.25(a)(2).

[25] State's Post-Submission Brief at 4 (noting that "[t]his statute was enacted to allow law enforcement to stop a predator before [he has] the opportunity to meet or injure the child.").

[26] House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 2228, 79th Leg., R.S. (2005). During the House Criminal Jurisprudence Committee Hearing on March 22, 2005, Shane Phelps, the First Assistant District Attorney in Brazos County, told a story about a "perpetrator" who entered a chat room and began an online relationship with a 13 year-old girl. After several chat sessions, the "perpetrator" drove to the victim's town and attempted to set up a meeting. Mr. Phelps stated that, unless the perpetrator actually met with the child, he could not charge the "perpetrator" with solicitation. At the Senate Criminal Justice Committee Hearing on May 19, 2005, Senator

"engage in conversations over the Internet with the intent of meeting a minor for sexual activities."[27]   But subsection (c), read in conjunction with subsection (d),[28] covers that "luring" scenario.   Subsection (b) punishes, as a third-degree felony, salacious speech over the internet (but not "dirty talk" spoken face-to-face) and the distribution of sexually explicit materials over the internet (but not the distribution of those same materials hand-to-hand) to a minor as long as the actor has the intent to arouse or gratify anyone's sexual desires.  It does not require that the actor ever have any intent to meet the minor for any reason.  We turn now to the First Amendment.

## II.

## A.    The First Amendment Overbreadth Doctrine

According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a "substantial" amount of protected speech "judged in relation to the statute's plainly legitimate sweep."[29]   The State may not justify restrictions on constitutionally

---

Seliger introduced the bill and said that its passage was necessary so that "perpetrators" could be charged with solicitation before they actually met the child.  He also mentioned that thirty-four other states criminalize child "luring" or solicitation.

[27]   Senate Research Center, Bill Analysis, Tex. H.B. 2228, 79th Leg., R.S. (2005).

[28]   TEX. PENAL CODE § 33.021(d). That provision reads as follows:
It is not a defense to prosecution under Subsection (c) that:
(1) the meeting did not occur;
(2) the actor did not intend for the meeting to occur; or
(3) the actor was engaged in a fantasy at the time of commission of the offense.
Refer to note 20 *supra* for the text of Subsection (c).

[29]   *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003).

*protected* speech on the basis that such restrictions are necessary to effectively suppress constitutionally *unprotected* speech, such as obscenity, child pornography, or the solicitation of minors.[30] "The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter. The Constitution requires the reverse."[31]  This rule reflects the judgment that "[t]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted[.]"[32]

Thus, in *Ashcroft v. Free Speech Coalition,* the Supreme Court rejected the government's argument that a statute criminalizing the distribution of constitutionally protected "virtual" child pornography[33] was necessary to further the state's interest in prosecuting the dissemination of constitutionally unprotected child pornography that used "real" children.  The government had argued that "the possibility of producing images by using computer imaging makes it very difficult for [the government] to prosecute those who produce pornography using real children."[34]  Thus, according to the government, the

---

[30] *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002).

[31] *Id.*

[32]  *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

[33] "Virtual" pornography is produced through computer-imaging technology without the use of real children.  *Free Speech Coalition*, 535 U.S. at 241-42.

[34] *Id.* at 254; *see also Stanley v. Georgia*, 394 U.S. 557, 567–68 (1968) (people have a First Amendment right to possess obscene material, even though the existence of this right makes it more difficult for the states to further their legitimate interest in prosecuting the distribution of obscenity).

protected speech (virtual child pornography) could be banned along with the unprotected speech (real child pornography).  The Supreme Court rejected that notion entirely: "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process."[35] *Free Speech Coalition* tells us that a ban upon constitutionally protected speech may not be upheld on the theory that "law enforcement is hard,"[36] and the State may not punish speech simply because that speech increases the chance that "a pervert" might commit an illegal act "at some indefinite future time."[37]

The State may regulate the content of constitutionally protected speech to promote a "compelling interest," such as the physical and psychological well-being of minors, if it chooses "the least restrictive means" to further that interest.[38]  But it is not enough that the governmental ends are compelling, the means to achieve those ends must be narrowly drawn

---

[35] *Free Speech Coalition*, 535 U.S. at 255; *see also Lewis v. City of New Orleans*, 415 U.S. 130, 133 (1974) (holding statute that prohibited cursing at police or using "obscene or opprobrious" language toward them was overbroad and facially unconstitutional).

[36] *Free Speech Coalition*, 535 U.S. at 254.

[37] *See Hess v. Indiana*, 414 U.S. 105, 108 (1973) (per curiam) (defendant's statement at an anti-war demonstration that "we'll take the fucking street later (or again)" could not be punished as obscene speech or "fighting words" because it did not incite imminent violence; such speech was constitutionally protected because it merely advocated illegal action at some undefined time in the future).

[38]  *Sable Communications of California, Inc. v. FCC*, 492 U.S. 115, 126 (1989) (denial of adult access to sexually explicit, non-obscene "Dial-a-Porn" far exceeded what was necessary to limit minors' access  to such messages).

to achieve only those ends.[39]

**B.    Section 33.021(b) Is Unconstitutionally Overbroad.**

Although the State has a compelling interest in protecting children from sexual predators, this "explicit sexual communications" provision is not narrowly drawn to achieve that legitimate goal.  Indeed, this subsection does not serve any compelling interest that is not already served by a separate, more narrowly drawn, statutory provision.  This subsection covers obscene material, but obscene communications and materials are already proscribed by Sections 43.22 and 43.23.[40]  This subsection covers material harmful to a minor, but that material is already proscribed by Section 43.24.[41]  This subsection covers child pornography,

---

[39] *Id.* ("The Government may serve this legitimate interest, but to withstand constitutional scrutiny, 'it must do so by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms.'").

[40] TEX. PENAL CODE §§ 43.22, 43.23.  Under Section 43.21(a)(1),
 "Obscene" means material or a performance that:
(A)    the average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;
(B)    depicts or describes:
(i) patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or
(ii) patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, covered male genitals in a discernibly turgid state or a device designed and marketed as useful primarily for stimulation of the human genital organs; and
(C)    taken as a whole, lacks serious literary, artistic, political, and scientific value.

[41] *Id.* § 43.24.  Under this statute, material that is harmful or obscene as to minors appeals to their prurient interest in sex, nudity, or excretion. *Id.* § 43.24(a)(2)(A).  Such material must also be patently offensive and utterly without redeeming social value for minors. *Id.* § 43.24(a)(2)(B) & (C). *See generally Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 498-99 (1985)(noting that descriptions and discussions of normal sexual interests are not prurient; the First Amendment

but that material is already proscribed by Section 43.26.[42]   The only material that this subsection covers that is not already covered by another penal statute is otherwise constitutionally protected speech.  "Sexual expression which is indecent but not obscene is protected by the First Amendment."[43]   Subsection (b) covers a whole cornucopia of "titillating talk" or "dirty talk."   But it also includes sexually explicit literature such as "Lolita,"[44] "50 Shades of Grey,"[45] "Lady Chatterly's Lover,"[46] and Shakespeare's "Troilus and Cressida."  It includes sexually explicit television shows, movies, and performances such as "The Tudors," "Rome,"  "Eyes Wide Shut," "Basic Instinct," Janet Jackson's "Wardrobe Malfunction" during the 2004 Super Bowl, and Miley Cyrus's "twerking" during the 2013 MTV Video Music Awards.  It includes sexually explicit art such as "The Rape of the Sabine Women," "Venus De Milo," "the Naked Maja," or Japanese Shunga.  Communications and materials that, in some manner, "relate to" sexual conduct comprise much of the art, literature, and entertainment of the world from the time of the Greek myths extolling Zeus's sexual prowess, through the ribald plays of the Renaissance, to today's Hollywood movies

---

protects "material that, taken as a whole, does no more than arouse, 'good, old fashioned, healthy' interest in sex.").

[42]  *Id.* § 43.26.

[43] *Sable Communications of California, Inc*, 492 U.S. at 126; *Roth v. United States*, 354 U.S. 476, 487 (1957) ("[S]ex and obscenity are not synonymous.").

[44] VLADIMIR NABOKOV, LOLITA (Weidenfeld & Nicolson 1959).

[45] E.L. JAMES, 50 SHADES OF GREY (Vintage 2012).

[46] D.H. LAWRENCE, LADY CHATTERLEY'S LOVER (Grove Press 1959).

and cable TV shows.

In sum, *everything* that Section 33.021(b) prohibits and punishes is speech and is either already prohibited by other statutes (such as obscenity, distributing harmful material to minors, solicitation of a minor, or child pornography) or is constitutionally protected.

1.    *The State Has a Compelling Interest in Preventing Child Abuse, but Section 33.021(b) Is Not Narrowly Drawn.*

"The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance."[47]  There is no question that the State has a right–indeed a solemn duty–to protect young children from the harm that would be inflicted upon them by sexual predators.  In upholding the constitutionality of Section 33.021(c)–the offense of online solicitation–the First Court of Appeals stated that "[t]he prevention of sexual exploitation and abuse of children addressed by the Texas online solicitation of a minor statute constitutes a government objective of surpassing importance."[48]  Indeed it does.  The statute prohibits internet communications with a minor that solicit an illegal sex act.[49]

---

[47] *New York v. Ferber*, 458 U.S. 747, 757 (1982).

[48] *Maloney v. State*, 294 S.W.3d 613, 627 (Tex. App.–Houston [1st Dist.] 2009, pet. ref'd) (holding that Section 33.021(c) was not unconstitutionally overbroad because it punished speech that solicited the commission of an illegal sexual act with a minor).

[49] The solicitation-of-a-minor subsection of Section 33.021 reads as follows:

(c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Many states have enacted statutes aimed at preventing the dissemination of "harmful" materials to minors and solicitation of minors over the internet. Courts all across the United States have upheld these statutes. They share either of two characteristics: (1) the definition of the banned communication usually tracks the definition of obscenity as defined by the Supreme Court in *Miller v. California*;[50] or (2) the statutes include a specific intent to commit an illegal sexual act, i.e., the actor intends to "solicit" or "lure" a minor to commit a sexual act. All of the cases cited by the State in its brief deal with such solicitation or dissemination statutes.[51] None of them deal with non-obscene, non-solicitative, non-child pornographic,

---

TEX. PENAL CODE § 33.021(c).

[50] 413 U.S. 15 (1973).

[51] *See, e.g., United States v. Tykarsky*, 446 F.3d 458, 472-73 (3d Cir. 2006) (upholding constitutionality of federal statute prohibiting actual or attempted persuasion of a minor to engage in illicit sexual activity and traveling for the purpose of engaging in illicit sexual activity); *United States v. Thomas*, 410 F.3d 1235, 1243-44 (10th Cir. 2005) (federal solicitation-of-a-minor statute prohibits conduct–the request that a minor commit an illegal sex act–not merely speech); *United States v. Johnson*, 376 F.3d 689, 694-95 (7th Cir. 2004) (federal child-pornography statute is not overbroad because it does not punish constitutionally protected speech); *see also United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (no overbreadth or ambiguity problems in federal child-solicitation law because statute applies only to those who target minors, and "the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sexual acts"); *Podracky v. Commonwealth*, 662 S.E.2d 81, 84-85 (Va. Ct. App. 2008) (upholding solicitation-of-a-minor statute and quoting the Supreme Court: "Offers to engage in illegal transactions are categorically excluded from First Amendment protection."); *People v. Smith*, 806 N.E.2d 1262, 1265 (Ill. Ct. App. 2004) (upholding solicitation-of-a-minor statute); *People v. Hsu*, 99 Cal. Rptr. 2d 184, 194-96 (Cal. Ct. App. 2000) (upholding internet solicitation of a minor statute because it required that defendant act "with the intent, or for the purpose of seducing a minor"); *People v. Foley*, 731 N.E.2d 123, 128-31 (N.Y. 2000) (upholding statute prohibiting the dissemination of indecent material to a minor because (1) the forbidden material was defined as being obscene, and (2) the actor "importunes, invites or induces a minor to engage in" various listed sex acts); *State v. Green*, 724 S.E.2d 664, 667-69 (S.C. 2012) (solicitation of a minor statute that required actor to have the "intent of persuading, inducing, enticing, or coercing the [minor] to engage or participate in a sexual activity" was not overbroad or vague because applied only to situations in

non-harmful-to-minors sexually explicit communications to minors.

Most states, like Texas, have also enacted a statute prohibiting the dissemination to children of material that is "harmful" to minors. These statutes, following the Supreme Court decision in *Ginsberg v. New York*,[52] define "harmful" as "material defined to be obscene on the basis of its appeal to [minors] whether or not it would be obscene to adults."[53]  Such statutes do not invade "the area of freedom of expression constitutionally secured to minors," merely because the definition of obscenity is geared "to social realities by permitting the appeal of this type of material to be assessed in term[s] of the sexual interest" of minors.[54] Although we have not directly addressed the issue, the First Court of Appeals upheld the constitutionality of Texas's statute prohibiting the sale of material harmful to minors in *State*

---

which the actor intentionally targets a minor for an illegal purpose); *State v. Hatton*, 985 So.2d 709 (La. 2008) (solicitation-of-child statute required communications "for the purpose of or with intent to persuade, induce, entice, or coerce the person to engage or participate in sexual conduct or a crime of violence"); *Hatch v. Superior Court*, 94 Cal.Rptr.2d 453 (Cal. 2000) (upholding dissemination of harmful materials to a minor when that person acts "with the intent or for the purpose of seducing a minor").

[52] 390 U.S. 629 (1968).

[53]  *Id.* at 631. Penal Code Section 43.24, the Texas statute prohibiting the sale, distribution or display of harmful material to minors, already bans the dissemination of material that is deemed obscene for minors.  Section 43.24(a)(2) defines "harmful material."
(2) "Harmful material" means material whose dominant theme taken as a whole:

> (A)     appeals to the prurient interest of a minor in sex, nudity, or excretion;
>
> (B)     is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and
>
> (C)     is utterly without redeeming social value for minors.

TEX. PENAL CODE § 43.24(a)(2).

[54]  *Ginsberg,* 390 U.S. at 637-38.

*v. Stone*.[55]

On the other hand, in *Reno v. ACLU*,[56] the Supreme Court struck down as overbroad a portion of the federal Communications Decency Act that prohibited the "knowing" dissemination of "indecent" communications as well as "obscene" communications to children over the internet.[57] As the court explained, "In evaluating the free speech rights of adults, we have made it perfectly clear that '[s]exual expression which is indecent but not obscene is protected by the First Amendment.'"[58] Therefore, the communication of descriptions or other depictions of non-obscene sexual conduct that do not involve live performances or visual reproductions of live performances by children retain First Amendment protections.[59]

*Ginsberg* and *Reno* are bookend cases: The Supreme Court upholds statutes prohibiting the dissemination of material that is defined as "obscene" for children, but it will strike down, as overbroad, statutes that prohibit the communication or dissemination of

---

[55] 137 S.W.3d 167, 181-82 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd) (relying on *Ginsberg* in holding that law prohibiting a person from exhibiting to children material deemed to be obscene as to them, although not to adults, was neither overbroad nor vague).

[56] 521 U.S. 844 (1997).

[57] *Id.* at 860 (striking down provisions of the Communications Decency Act (CDA) prohibiting internet transmission of "indecent" communications to minors or sending "patently offensive" communications through use of interactive computer service to minors; these provisions, which went beyond prohibiting dissemination of "obscene" materials, were facially overbroad in violation of the First Amendment).

[58] *Id.* at 874.

[59] *Ferber*, 458 U.S. at 764-65.

material that is merely "indecent" or "sexually explicit."  New Mexico and Virginia enacted statutes that criminalized the dissemination of non-obscene but sexually explicit material to minors over the internet, but federal courts held those statutes unconstitutionally overbroad under *Reno* because they unconstitutionally burdened otherwise protected speech.[60]

Looking at the present statute, the compelling interest of protecting children from sexual predators is well served by the solicitation-of-a-child prohibition in subsection (c). But subsection (b) does not serve that same compelling purpose.  It may protect children from suspected sexual predators before they ever express any intent to commit illegal sexual acts, but it prohibits the dissemination of a vast array of constitutionally protected speech and materials.  The State argues that this provision is intended to target "grooming" by predators who develop a relationship with their intended victim by befriending the child online, developing their trust, and then eventually engaging in sexually explicit conversations.  We are unable to find anything in the 2005 legislative history to support an intent to criminalize "grooming" by titillating speech.  The intent expressed in the bill analyses, the committee hearings, and the floor debate was that the crime of solicitation of a minor on the internet is complete at the time of the internet solicitation, rather than at some later time if and when the

---

[60]  *ACLU v. Johnson*, 194 F.3d 1149, 1158-60 (10th Cir. 1999) (law criminalizing internet dissemination of non-obscene, sexually explicit materials to minors was overbroad; distinguishing *Ginsberg* and following *Reno*); *Psinet, Inc. v. Chapman*, 362 F.3d 227, 234-36 (4th Cir. 2004) (although prior statute prohibiting sale of material harmful to children had been upheld, amended version that proscribed dissemination of material harmful to children over the internet was overbroad as it would have a chilling effect upon otherwise protected speech; those who communicate in chat rooms or post sexually explicit materials on the internet cannot prevent juveniles from accessing the material).

actor actually meets the child. Furthermore, the Supreme Court has rejected the notion that allowing the dissemination of "virtual" child pornography would "whet the appetites of pedophiles," and therefore could be banned.[61] We must do the same here.

But even if the Legislature did have an intent to prohibit "grooming" in subsection (b), the culpable mental state prescribed in that provision—"intent to arouse or gratify the sexual desire of any person"—is not narrowly drawn to achieve that end. A more narrowly drawn culpable mental state would be "with intent to induce the child to engage in conduct with the actor or another individual that would constitute a violation of §§ 21.11, 22.011, or 22.021."[62] The State suggests that, without the current provision, perverts will be free to

---

[61] *Free Speech Coalition*, 535 U.S. at 253.

[62] *See People v. Cervi*, 270 Mich. App. 603, 616-17, 620, 717 N.W.2d 356, 364-65, 366-67 (2006) (upholding constitutionality of MCL 750.145d, which provided: "A person shall not use the internet or a computer . . . to communicate with any person for the purpose of . . . [c]ommitting, attempting to commit, conspiring to commit, or soliciting another person to commit conduct proscribed under section . . . 520d . . . in which the victim or intended victim is a minor or is believed by that person to be a minor"; 520d criminalized conduct in which "the person engages in sexual penetration with another person and . . . [t]hat other person is at least 13 years of age and under 16 years of age"; concluding that the statute held the defendant "accountable not for his words, but for the act of communicating with a perceived minor with intent to make her the victim of a crime"); *People v. Keister*, 198 Cal. App. 4th 442, 445, 449-50, 129 Cal. Rptr. 3d 566, 569, 572 (3 Dist. 2011) (upholding constitutionality of CAL. PENAL CODE §288.3, which provided: "Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section 207, 209, 261, 264.1, 273a, 286, 288, 288a, 288.2, 289, 311.1, 311.2, 311.4 or 311.11 involving the minor" commits an offense; statute does not unconstitutionally restrict protected speech because the defendant must have an "unlawful sexual intent" that involves "the specific intent to commit an enumerated sex offense"); *Cashatt v. State*, 873 So. 2d 430, 433-34, 435 n.1 (1st Dist. 2004) (upholding constitutionality of Florida Statutes § 847.0135(3), which provided: "Any person who knowingly utilizes a computer on-line service, Internet service, or local bulletin board service to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child or another person believed by the person to be a child, to commit any illegal act described" in certain

bombard our children with salacious emails and text messages, and parents and law enforcement would be unable to stop it.  But as we have just observed, there are more narrow means of drawing a statute to target the phenomenon of "grooming."

Moreover, section 42.07 of the Penal Code, the harassment law, already prohibits and punishes an electronic communication that "makes a comment, request, suggestion, or proposal that is obscene."[63] Or, if the repeated emails or text messages are not obscene, but they are "reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend" the child, the sender may be prosecuted under Section 42.07(a)(7).[64]

In sum, we conclude that the statutory provision before us is not narrowly drawn to effectuate a compelling state interest because there are narrower means of achieving the State interests advanced here, at least some of which are already covered by other statutes

---

sections proscribing sex offenses commits an offense; stating: "We have grave doubts that the framers of the Constitution, had they the gift of seeing into the future, would have intended that sexually explicit e-mails sent to a minor for the purpose of seducing the minor to engage in illegal sexual acts be protected under the First Amendment, notwithstanding that identical communications to an adult would be protected."). *See also People v. Foley*, 94 N.Y.2d 668, 731 N.E.2d 123 (Ct. App. 2000); *State v. Backlund*, 672 N.W.2d 431 (N.D. 2003).

[63] TEX. PENAL CODE § 42.07(a)(1) ("A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person: (1) initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene[.]").

[64] TEX. PENAL CODE § 42.07(a)(7) ("A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person: (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another."); *see Scott v. State*, 322 S.W.3d 662, 670-71 (Tex. Crim. App. 2010) (upholding harassment statute as a content-neutral restriction on speech because it does not depend on *what* the communication is, only that the defendant's repeated calls are intended to harass the recipient).

prohibiting solicitation, obscenity, harassment, or the distribution of harmful material to minors.

2.    *The State's Arguments.*

The State argues that the Texas "sexually explicit communications" provision is narrowly drawn because the statute reaches only "sexually explicit materials" and the statute requires that the actor communicate those materials with an intent to arouse or gratify someone's sexual desires.    Neither of those arguments saves the statute from being unconstitutionally overbroad.

First, the State argues that appellant "has failed to demonstrate how intentional conversations, sexually explicit in nature, with minors constitute protected speech."[65]    That is, of course, exactly backwards.[66]    Statutes that regulate the content of speech–as this statute most assuredly does–are presumed to be invalid, and it is the State, not appellant, that must establish its validity.[67]    The State has not cited a single case from any jurisdiction that has held that sexually explicit speech that is not obscene or "harmful" to minors is outside the protection of the First Amendment as long as the actor has an intent to arouse or gratify

---

[65]   State's Brief at 8.

[66]   In its Brief, the State argued that it was appellant's burden to demonstrate that this content-based regulation of speech was unconstitutional, but at oral argument, the prosecutor agreed that strict scrutiny applies and that courts should apply a presumption of invalidity to content-based limitations on speech.

[67]   *See United States v. Playboy Entm't Grp.,* 529 U.S. 803, 817 (2000); refer to text accompanying notes 8-19 *supra.*

sexual desire.[68]   And, as noted above, we are unable to find any such case or other state

statute.  The Supreme Court decisions in *Reno*, *Ashcroft II*, and *Free Speech Coalition* (none

of which did the State discuss or distinguish) appear to contradict the State's position.

Second, the State claims that the "explicit sexual communications" law is not

overbroad because it "is specifically tailored to battle the widespread use of the Internet and

technology as a tool for adults who prey on children, with the specific intent to arouse or

gratify a sexual desire."[69]   It argues that this law is narrowly tailored by this scienter

requirement.  But the First Amendment protects thoughts just as it protects speech.[70]  As the

Supreme Court warned,

> The government "cannot constitutionally premise legislation on the desirability
> of controlling a person's private thoughts."  First Amendment freedoms are
> most in danger when the government seeks to control thought or to justify its
> laws for that impermissible end. The right to think is the beginning of freedom,
> and speech must be protected from the government because speech is the
> beginning of thought.[71]

---

[68] For the cases relied upon by the State, see note 51 *supra.*

[69] State's Post-Submission Brief at 3 (citing *Lo*, 393 S.W.3d at 294-95).

[70] *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (First Amendment protects "freedom of thought").

[71] *Free Speech Coalition*, 535 U.S. at 252-53 (quoting *Stanley v. Georgia*, 394 U.S. 557, 566 (1969)).  In *Stanley*, the Supreme Court struck down Georgia's law prohibiting the possession of obscenity in the privacy of one's home, explaining,
> If the First Amendment means anything, it means that a State has no business telling
> a man, sitting alone in his own house, what books he may read or what films he may
> watch. Our whole constitutional heritage rebels at the thought of giving government
> the power to control men's minds.
>     And yet, in the face of these traditional notions of individual liberty, Georgia
> asserts the right to protect the individual's mind from the effects of obscenity. We are

A man's thoughts are his own; he may sit in his armchair and think salacious thoughts, murderous thoughts, discriminatory thoughts, whatever thoughts he chooses, free from the "thought police."[72]  It is only when the man gets out of his armchair and acts upon his thoughts that the law may intervene.[73]  To protect the right of citizens to think freely and to protect speech for its own sake, the Supreme Court's cases "draw vital distinctions between . . . ideas and conduct."[74]  Section 33.021(b) prohibits constitutionally protected speech when that speech is coupled with constitutionally protected thought.

The State has a compelling need to protect children from sexual predators, but this statute is not narrowly drawn to achieve only that legitimate goal of prosecuting "sexual

> not certain that this argument amounts to anything more than the assertion that the State has the right to control the moral content of a person's thoughts.

*Id.* at 565.  *See also Ex parte Nyabwa*, 366 S.W.3d 710, 711-12 (Tex. Crim. App. 2012) (Keller, P.J., dissenting to refusal of defendant's PDR) (addressing the purported narrowing of the improper photography statute based on the defendant's intent to arouse or gratify sexual desires; "It is not enough to say that the statute is directed only at intent, if the intent consists of thought that is protected by the First Amendment. There are limits to the freedom of thought protected by the First Amendment . . . . But in the statute before us, the person photographed could be a fully-clothed adult walking down a public street. The breadth of this statute is breathtaking, and the type of intent that it regulates is not inherently exempt from First Amendment protection.").

[72] GEORGE ORWELL, 1984 bk. 1, ch. 1 ("The thought police would get him just the same. He had committed–would have committed, even if he had never set pen to paper–the essential crime that contained all others in itself. Thoughtcrime, they called it. Thoughtcrime was not a thing that could be concealed forever. You might dodge successfully for a while, even for years, but sooner or later they were bound to get you.").

[73] See *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 67–68 (1973) ("The fantasies of a drug addict are his own and beyond the reach of government, but government regulation of drug sales is not prohibited by the Constitution; stating that regulations aimed at conduct which have only an incidental effect on thought do not violate the First Amendment's freedom of mind mandate.").

[74] *Free Speech Coalition*, 535 U.S. at 253.

predators who attempt to solicit a minor, or a police officer posing as a minor, for unlawful activity when the individual does not show up for the meeting."[75]  This particular provision does not speak to an actor soliciting a child, meeting a child, intending to meet a child, or any other predatory conduct.  Indeed, it would apply to a Texas defendant who has "titillating talk" with a child in Outer Mongolia or a Mongolian who has salacious communications with a child in Dallas.  Instead, this law prohibits all internet communications relating to or describing explicit sexual material by an adult to a minor if that adult speaks with the intent to arouse or gratify sexual desire.  But, consistent with the First Amendment, it is conduct designed to induce a minor to commit an illegal sex act with titillating talk that may be proscribed, not the titillating talk itself.[76]

The State suggests that the statute prohibits only one-on-one communications–*i.e.*, the sexual predator who is "grooming" a child with "titillating talk."  But the statute is not limited to one-on-one communications; instead it would apply to one who communicates via the internet with one, ten, or a hundred minors, perhaps sending them salacious selections from "Lolita" with the intent to tickle their fancy.  Furthermore, it would be anomalous to think that a person who makes "titillating talk" to one minor over the internet may be subject to felony prosecution, but that same person who makes "titillating talk" to two or more

---

[75] House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 2228, 79th Leg., R.S. (2005).

[76] As appellant notes, "One can titillate without trying to consummate."  Appellant's Brief at 10.

minors in a chat room or through a mass email is not subject to criminal prosecution. As the Tenth Circuit noted in *ACLU v. Johnson*, such an interpretation "would lead to the absurd result that no violation of the statute would occur if someone sent a message to two minors, or a chat room full of minors, or a minor and an adult."[77]

For the above reasons, we hold that the court of appeals erred in applying an incorrect standard of review and in upholding the constitutionality of Section 33.021(b). We reverse the decision of that court and remand the case to the trial court to dismiss the indictment.

Delivered: October 30, 2013
Publish

---

[77] *ACLU v. Johnson*, 194 F.3d 1149, 1159 (10th Cir. 1999) (rejecting government's argument that court could narrow statute criminalizing internet distribution of material harmful to minors by reading it to apply only to one-on-one communications).